**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **ULTRA PAINTING, LLC,** | * | |
| | * | |
| **Plaintiff/Counter-Defendant,** | * | |
| | * | |
| **v.** | * | **Civil Case No.: SAG-21-1303** |
| | * | |
| **GTB ENTERPRISES, INC.,** | * | |
| | * | |
| **Defendant/Counter-Plaintiff.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Ultra Painting, LLC ("Plaintiff" or "Ultra") was subcontracted by Defendant GTB Enterprises, Inc. d/b/a Paintworx ("Defendant" or "Paintworx") to provide painting services for a project at the Odenton Town Center in Odenton, Maryland (the "Project"). Ultra sued Paintworx in the Circuit Court for Prince George's County, alleging breach of contract and unjust enrichment, stemming from Paintworx's alleged failure to pay Ultra for its painting services and labor on the Project. On May 26, 2021, Paintworx removed the case to this Court and filed an answer and counterclaim. ECF 1-3. After Ultra answered Paintworx's counterclaim, but before discovery, Paintworx filed a motion for partial summary judgment. ECF 12. Ultra opposed that motion, ECF 16, and Paintworx replied, ECF 18. The Court has reviewed these filings and the exhibits attached to them. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, the motion will be denied.

## I.   FACTUAL BACKGROUND

Through a series of text messages and phone calls in March, 2020, the parties agreed that Ultra would provide painting services on the Project for $280,000. ECF 18 at 7. Ultra alleges that it "performed certain commercial painting services from March 2020 to October 5, 2020." ECF

1-1 ¶ 8.  According to Ultra, the scope of the Project changed, resulting in "additional time and staffing demands upon Ultra[.]"  *Id.* ¶ 9.  In September, 2020, Ultra alleges that Paintworx admitted it had supplied the wrong paint for the Project, which required Ultra to redo work it had already performed.  *Id.* ¶¶ 11-12.  Ultra alleges that Paintworx failed to make full and proper payment on several of its invoices and ultimately fired Ultra after the general contractor complained about the quality of the paint work.  *Id.* ¶ 14.

The basis for Paintworx's motion for partial summary judgment stems from facts wholly outside of the Complaint.  According to Paintworx, "[t]hroughout the parties' course of dealing, from March through September 30, 2020, each time Ultra was paid for its services, it signed and delivered" unconditional releases of all claims related to the Project through the date of each release.  ECF 12-2 at 1-2.  The releases state, in relevant part:

> the undersigned hereby waives and releases any and all claims, demands, liens, or right(s) of action, whether legal or equitable, against the above Project, said Subcontractor, L.F., Jennings, Inc., any payment bonds or sureties, and the Project Owner, for and on account of all labor, materials, services and/or equipment furnished to the Project by or through the undersigned through the Release Date.
>
> IN CONSIDERATION of the payment sought hereby, the undersigned respectfully warrants that all material, labor, services and/or equipment used by the undersigned or its sub-contractors, suppliers or materialmen for the Project through the Release Date hereof have been paid for in full[.]

ECF 12-2 at 2.  The last release Ultra signed was dated September 30, 2020, so Paintworx argues that it is entitled to partial summary judgment insofar as Ultra's claims predate September 30, 2020.  *Id.* at 3.

## II.     LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of

showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)).  If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.*  The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)).  The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352.  The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671).  If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)).  In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III.    ANALYSIS

The question before this Court is whether Ultra's signing of the releases at issue foreclosed its ability to pursue any claims against Paintworx for work that predated those releases. That question depends on the validity and enforceability of the releases and the terms of the parties' original agreement. Both of those issues turn on disputed facts that necessitate the need for further factual development.

Paintworx argues that Ultra released its claims as consideration for receiving partial progress payments over the course of the Project, rather than one lump-sum payment upon Ultra's completion of the work. ECF 18 at 6. Paintworx contends that Ultra executed six of these releases over the course of the Project, and that Ultra had executed similar releases on other prior projects on which they worked together. *Id.* at 3. This, Paintworx submits, establishes a prior "course of dealing" sufficient to demonstrate Ultra's intent to secure partial payments in exchange for a release of its claims. *Id.* at 4.

Ultra argues, however, that on several occasions Paintworx made progress payments without requiring it to sign a release, which arguably undermines Paintworx's "course of dealing" argument. ECF 16-2 at 2. Moreover, Ultra contends that at the time each release was executed, "payment was due under the parties' original oral contract." *Id.* Although the parties' text messages clearly do not reference any payment schedule, ECF 18 at 6-7, Ultra argues that there was an oral agreement that presumably either supplanted or modified the agreement expressed in the text messages. *See* ECF 16-2 at 2; ECF 16-3 ¶ 8.

This is not a traditional case involving a written contract with clearly ascertainable terms. Instead, the parties dispute the terms of their contract. Paintworx argues the contract is limited to what is written in the text messages, whereas Ultra references an oral contract, the terms of which

remain unknown.  And  the parties' diametrically opposing views of their prior course of dealing (either on this Project or others) may or may not shed light on their intentions when entering this agreement.  These issues require a fully developed factual record before this Court can turn to the legal work of interpreting the terms of the parties' agreement and assessing the enforceability of the releases.

Both parties rely on *United States v. Hartford Accident & Indemnity Co.* to support their positions.  168 F. Supp. 3d 824 (D. Md. 2016).  But their reliance on that case highlights the need for factual development in this one.  There, Judge Bredar enforced the releases at issue because the terms of the parties' underlying agreement required the plaintiff to execute them.  *Id.* at 833. In response to the plaintiff's argument that the releases lacked consideration under the pre-existing duty rule, Judge Bredar explained: "[w]ere the Court to construe the Partial Releases in isolation as independent, freestanding contracts, Chasney's argument might have traction.  But because the Partial Releases are expressly authorized by the Subcontract, the more reasonable approach is to view them as supported by the same consideration that supports the Subcontract[.]"  *Id.* at 835.

Here, Paintworx argues that the releases are independent contracts supported by separate consideration from the parties' underlying agreement (*i.e.* Ultra's release of claims in exchange for Paintworx's early progress payments).  ECF 18 at 4.  Ultra, however, argues that the releases cannot be construed as independent contracts because they are supported by the same consideration that formed the basis for the parties' original contract.  ECF 16-2 at 2, 4-5.  In Ultra's view, at the time each release was signed, Paintworx already had an obligation under the parties' original agreement to pay Ultra whether it agreed to sign the releases or not.  *Id.*  These disputes can only be resolved after the Court is presented with an adequate factual record to determine the terms of the parties' original agreement.

**IV.     CONCLUSION**

For the foregoing reasons, Paintworx's motion for partial summary judgment, ECF 12, will be denied.  That denial will be without prejudice to its ability to renew its argument after the close of discovery in this case.  A separate order follows.


Dated: January 28, 2022                                    _____/s/_____

                                                          Stephanie A. Gallagher
                                                          United States District Judge